UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ZANDER P.,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION**<br><br>Case No. 1:22-cv-00020<br><br>Magistrate Judge Daphne A. Oberg |

    Plaintiff Zander P.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability benefits under Title XVI of the Social Security Act.[3] Mr. P. was fourteen years old when he applied for disability benefits.[4] The Administrative Law Judge ("ALJ") determined Mr. P. did not qualify as disabled.[5] Mr. P. argues the ALJ erred by failing to properly consider medical opinion evidence from three medical sources.[6]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Petition for Review, Doc. No. 8; Mot. for Review of Agency Action ("Opening Br."), Doc. No. 20.)

[3] 42 U.S.C. §§ 1381–1385.

[4] (*See* Answer Br. 2, Doc. No. 22.)

[5] (Certified Tr. of Admin. R. ("Tr.") 13–22, Doc. No. 16.)

[6] (Opening Br. 4–7, Doc. No. 20.)

1

The court[7] has carefully reviewed the record and the parties' briefs.[8] Because the evidence identified by Mr. P. does not qualify as medical opinion evidence under the governing regulations, the ALJ did not err in failing to evaluate this evidence under the standards applicable to medical opinions. Further, the record demonstrates the ALJ properly considered the evidence from these medical sources. Therefore, the court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[9] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[10]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[11] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12] Substantial evidence is "such relevant evidence as a

---

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Doc. No. 13.)

[8] The appeal is determined on the written memoranda as oral argument is unnecessary. *See* DUCivR 7-1(g).

[9] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (internal quotation marks omitted).

reasonable mind might accept as adequate to support a conclusion."[13] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[15]

## APPLICABLE LAW

A child under the age of eighteen is considered disabled under the Social Security Act if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[16] But a child who "engages in substantial gainful activity" may not be considered disabled.[17]

The ALJ employs a three-step sequential evaluation to determine whether a child is disabled, considering:

1) whether the child is engaged in substantial gainful activity;

2) whether the child has a medically determinable impairment or combination of impairments which is severe; and

---

[13] *Id.* (internal quotation marks omitted).

[14] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[15] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 1382c(a)(3)(C)(i).

[17] *Id.* § 1382c(a)(3)(C)(ii).

3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in the appendix of the relevant disability regulation.[18]

If the impairments do not meet or medically equal a specific listing, the ALJ considers whether they functionally equal the severity of the listings by evaluating six "domains" of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical wellbeing.[19] To functionally equal the severity of a listing, the impairment must result in marked limitations in at least two of the six domains or an extreme limitation in one domain.[20]

## PROCEDURAL HISTORY

Mr. P, through his mother, applied for supplemental security income in October 2019, when he was fourteen years old.[21] After an administrative hearing,[22] the ALJ issued a decision in September 2021 finding Mr. P. not disabled and denying benefits.[23]

---

[18] See 20 C.F.R. § 416.924(a)–(d); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).

[19] 20 C.F.R. § 416.926a(b)(1)(i)–(vi); *Briggs*, 248 F.3d at 1237–38.

[20] 20 C.F.R. § 416.926a(a); *Briggs*, 248 F.3d at 1237 n.1.

[21] (*See* Tr. 62.)

[22] (*See id.* at 28–60.)

[23] (*Id.* at 13–22.)

At step one of the sequential evaluation, the ALJ found Mr. P. had not engaged in substantial gainful activity.[24] At step two, the ALJ found Mr. P. had the severe impairments of autism spectrum disorder, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder ("ADHD"), and neurodevelopment disorder.[25] At step three, the ALJ found Mr. P.'s impairments did not meet or medically equal the severity of a listed impairment, specifically discussing the listings for mood disorders (112.04), anxiety disorders (112.06), ADHD (112.11), and autism (112.10).[26] The ALJ then found Mr. P.'s impairments did not functionally equal the severity of the listings based on the six domains of functioning.[27] Specifically, the ALJ determined Mr. P. had a marked limitation in interacting and relating with others, but less-than-marked or no limitations in the other five domains.[28] Therefore, the ALJ concluded Mr. P. was not disabled.[29]

The Appeals Council denied Mr. P.'s request for review,[30] making the ALJ's decision final for purposes of judicial review.

---

[24] (*Id.* at 14.)

[25] (*Id.*)

[26] (*Id.* at 14–15.)

[27] (*Id.* at 16–21.)

[28] (*Id.*)

[29] (*Id.* at 21–22.)

[30] (*Id.* at 1–3.)

DISCUSSION

Mr. P. contends the ALJ failed to properly evaluate medical opinion evidence.[31] Specifically, he argues the ALJ failed to address medical opinion evidence offered by Dr. Elder and Dr. Nelson, and failed to apply the correct legal standards for evaluating medical opinion evidence from Dr. Swaner.[32] In response, the Commissioner argues the evidence from these sources does not qualify as medical opinion evidence under the governing regulations.[33]

**A. Legal Standards**

The Social Security Administration implemented new regulations for evaluating medical opinion evidence in cases filed on or after March 27, 2017, like Mr. P.'s.[34] Under these regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."[35] Instead, the ALJ assesses the persuasiveness of the opinions based on: (1) supportability (the extent to which the opinion is supported by underlying medical evidence and explanations), (2) the consistency of the opinion with other medical and non-medical sources, (3) the medical source's relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship), (4) any specialization, and (5) any other relevant factors.[36] The most

---

[31] (Opening Br. 4–7, Doc. No. 20.)

[32] (*Id.* at 6–7.)

[33] (Answer Br. 12–13, Doc. No. 11.)

[34] *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. § 416.920c.

[35] 20 C.F.R. § 416.920c(a).

[36] *Id.* § 416.920c(c)(1)–(5).

important factors are supportability and consistency—the ALJ is required to explain how she evaluated those two factors.[37]

The new regulations define a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated abilities.[38] For child disability claims, medical opinions "are about impairment-related limitations and restrictions in [the claimant's] abilities in the six domains of functioning": acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being.[39]

The regulations differentiate "medical opinions" from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both."[40] And both these categories are distinguished from "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[41] Finally, in adopting these regulations, the agency explained it is "not appropriate to categorize symptoms as medical

---

[37] *Id.* § 416.920c(b)(2). In most cases, an ALJ is not required to articulate how she considered the remaining factors. She must do so only where she finds two different medical opinions regarding the same issue are consistent with the record and equally well-supported. *Id.* § 416.920c(b)(2)–(3).

[38] *Id.* § 416.913(a)(2).

[39] *Id.* § 416.913(a)(2)(ii).

[40] *Id.* § 416.913(a)(1).

[41] *Id.* § 416.913(a)(3).

7

opinions because they are subjective statements made by the individual, not by a medical source, about his or her condition."[42]

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[43] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[44]

### B. Dr. Elder

Dr. A. Kyle Elder performed a psychological evaluation of Mr. P. on December 7, 2017.[45] Under "presenting concerns," Dr. Elder noted Mr. P. "was processing things really slow[ly] in school" and didn't "show emotion like other kids do."[46] Dr. Elder also noted that Mr. P.'s mother reported he "lack[ed] social skills to make and keep friends" and "seem[ed] 'odd' in social situations."[47] Dr. Elder performed testing and found Mr. P. "presented with significant symptoms" of autism spectrum disorder and ADHD.[48] Dr. Elder noted "[t]he scope of the current evaluation was to consider the diagnosis of Autism."[49] He recommended therapy to

---

[42] 82 Fed. Reg. 5844, *5850.

[43] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[44] *Id.* at 1010.

[45] (Tr. 275–95.)

[46] (*Id.* at 276.)

[47] (*Id.* at 277.)

[48] (*Id.* at 293–95.)

[49] (*Id.* at 295.)

8

work on social skills, "[i]n-clinic services with peers present to focus on social interactions and relating to others," mental health therapy, and case management services.[50]

Mr. P. erroneously contends the ALJ's decision "fails to mention, refer to, or discuss this evaluation."[51] In fact, the ALJ cited Dr. Elder's evaluation and noted "[t]he record documents that the claimant was diagnosed with autism spectrum disorder in 2017."[52] However, the ALJ did not assess Dr. Elder's evaluation under the framework applicable to medical opinion evidence. Mr. P. contends this was error.[53]

Dr. Elder's evaluation did not contain medical opinions as defined in the governing regulations. Mr. P. argues Dr. Elder offered medical opinions regarding Mr. P.'s abilities in the functional domain of "interacting and relating with others," pointing to Dr. Elder's description of Mr. P.'s presenting concerns.[54] But this section of the evaluation merely relays concerns and symptoms reported by Mr. P. and his mother, which are not medical opinions. Mr. P. also argues the diagnoses and treatment recommendations in the report indicate Dr. Elder "saw limitations" in this domain,[55] but diagnoses and prescribed treatment likewise do not qualify as medical opinions.[56] And while the evaluation includes clinical observations and test results, it contains no medical opinions regarding particular functional abilities or limitations in the six domains.

---

[50] (*Id.*)

[51] (Opening Br. 6, Doc. No. 20.)

[52] (Tr. 18 (citing "Exhibit 1F/20," *id.* at 294).)

[53] (Opening Br. 7, Doc. No. 20.)

[54] (*See id.* at 6; Reply 3–4, Doc. No. 23.)

[55] (Reply 3–4, Doc. No. 23.)

[56] 20 C.F.R. § 416.913(a)(3).

Because Dr. Elder's evaluation did not contain medical opinion evidence, as that term is defined in agency regulations, the ALJ was not required to assess its persuasiveness or articulate findings regarding supportability and consistency.[57]

The record demonstrates the ALJ considered Dr. Elder's evaluation, specifically citing to Dr. Elder's diagnosis of autism spectrum disorder.[58] The ALJ apparently credited this diagnosis, finding the disorder to be a severe impairment.[59] Further, the ALJ found Mr. P. had "a marked limitation in interacting and relating with others."[60] Mr. P. does not explain how Dr. Elder's evaluation is inconsistent with this finding, or any other findings in the ALJ's decision. Where the ALJ considered this evidence and Mr. P. has not demonstrated any inconsistency with the ALJ's findings, no further discussion of Dr. Elder's evaluation was required. Mr. P. has demonstrated no error in the ALJ's treatment of Dr. Elder's evaluation.

### C. Dr. Nelson

Dr. Jackie Nelson evaluated Mr. P. on November 30 and December 2, 2020.[61] She noted Mr. P. had been referred for an evaluation because he had been diagnosed with autism spectrum disorder in 2017 but needed a more recent assessment for purposes of his Supplemental Security Income application.[62] Dr. Nelson performed testing and found Mr. P. presented with a "high

---

[57] *See* 20 C.F.R. § 416.920c.

[58] (Tr. 18 (citing *id.* at 294).)

[59] (*Id.* at 14.)

[60] (*Id.* at 20); *see also* 20 C.F.R. § 416.926a(e)(2)(i) ("We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.").

[61] (Tr. 365–88.)

[62] (*Id.* at 365.)

level" of autism spectrum disorder characteristics.[63] According to Dr. Nelson, test results indicated Mr. P. was "delayed in his adaptive functioning" and experienced "a significant amount of ADHD symptoms," "significant sensory differences," and "significant emotional distress."[64] She noted that "[b]ased upon reports, [Mr. P. was] struggling socially which [was] causing him significant emotional distress."[65] During the exam, Dr. Nelson also observed Mr. P. "displayed very little eye contact," "did not seem to enjoy verbalizing or having conversation," "appeared physically restrained," "displayed few social gestures," "displayed very little facial expression," and appeared quickly overwhelmed by noise.[66] Dr. Nelson stated Mr. P. would likely continue to struggle if not provided additional care "to support his adaptive and social deficits," and she recommended continued therapy for autism spectrum disorder and occupational therapy.[67] Dr. Nelson's evaluation was listed as an exhibit in the hearing record,[68] but the ALJ did not explicitly mention it in his decision.

Mr. P. contends the ALJ should have analyzed Dr. Nelson's evaluation under the framework applicable to medical opinions, arguing Dr. Nelson addressed limitations in the domain of "interacting and relating with others."[69] But Dr. Nelson did not offer any medical opinions regarding Mr. P.'s functional abilities or limitations in this domain (or in the other

---

[63] (*Id.* at 386.)

[64] (*Id.*)

[65] (*Id.*)

[66] (*Id.* at 374–76.)

[67] (*Id.* at 386–87.)

[68] (*Id.* at 26.)

[69] (Opening Br. 6–7, Doc. No. 20; Reply 4, Doc. No. 23.)

11

domains). Dr. Nelson's evaluation consists of clinical observations, test results, diagnoses, and treatment recommendations—none of which qualify as medical opinion evidence under agency regulations. Because Dr. Nelson's evaluation did not contain medical opinion evidence, the ALJ was not required to assess its persuasiveness or articulate findings regarding supportability and consistency.[70]

The ALJ also did not err by failing to mention Dr. Nelson's evaluation in his opinion. Dr. Nelson's evaluation was listed as a hearing exhibit,[71] and the ALJ stated he "considered all relevant evidence based on the requirements of 20 CFR [§] 416.924."[72] In assessing the six domains, the ALJ specifically stated he considered all relevant evidence, including objective medical evidence and other relevant evidence from medical sources.[73] The court takes the ALJ at his word.[74] Further, Mr. P. does not explain how Dr. Nelson's evaluation is inconsistent with the ALJ's finding that Mr. P. had a marked limitation in interacting and relating with others—or with any other findings. Under these circumstances, the ALJ was not required to specifically

---

[70] *See* 20 C.F.R. § 416.920c.

[71] (Tr. 26.)

[72] (Tr. 13); *see also* 20 C.F.R. § 416.924 ("We consider all relevant evidence in your case record when we make a determination or decision whether you are disabled.").

[73] (Tr. 16.)

[74] *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (unpublished) ("When the ALJ indicates he has considered all the evidence[,] [the court's] practice is to take the ALJ at his word." (internal quotation marks omitted)).

discuss Dr. Nelson's evaluation.[75] Mr. P. has demonstrated no error in the ALJ's treatment of Dr. Nelson's evaluation.

### D. Dr. Swaner

Dr. Craig Swaner conducted a psychological consultative examination of Mr. P. on March 10, 2020.[76] Dr. Swaner performed testing and diagnosed Mr. P. with autism spectrum disorder, ADHD, social anxiety disorder, and unspecified neurocognitive disorder.[77] Under "general observation[s]," Dr. Swaner noted it was "apparent" Mr. P. did "not recognize a number of social situations"; he had "difficulty with distractibility," "difficulty with [a] short attention span," "difficulties with listening and paying attention to details," and limited organizational skills; he needed reinforcement to stay on task; and he exhibited tics.[78] During a mental status exam, Dr. Swaner noted Mr. P. had "some difficulty with comprehending information" and "some difficulty with more detailed instructions."[79] Dr. Swaner noted that during the course of the evaluation, Mr. P. "exhibit[ed] limits in nonverbal behavior, restricted social interaction and a history of repetitive behaviors," and "literally no social reciprocity or emotional reciprocity."[80]

---

[75] *See Clifton*, 79 F.3d at 1009–10 ("[A]n ALJ is not required to discuss every piece of evidence" but only supporting evidence and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

[76] (Tr. 297–303.)

[77] (*Id.* at 303.)

[78] (*Id.* at 297–98.)

[79] (*Id.* at 301–02.)

[80] (*Id.* at 299, 303.)

Dr. Swaner stated Mr. P. was not on his medication at the time of this evaluation because his mother wanted Dr. Swaner to see how he behaved when unmedicated.[81]

The ALJ discussed Dr. Swaner's examination in his analysis of the six functional domains.[82] The ALJ referred to Dr. Swaner's diagnoses and his observations that Mr. P. had difficulty with distractibility.[83] But the ALJ also noted Mr. P. was not on his medication during the exam and that Mr. P.'s mother testified his prescribed medication was effective in reducing his symptoms.[84] In discussing the domain of "interacting and relating with others," the ALJ mentioned Dr. Swaner's observations that Mr. P. demonstrated some anxiety, facial tics, minimal nonverbal communication skills, minimal eye contact, and no social/emotional reciprocity.[85] The ALJ found "some demonstrated inconsistency between the claimant's performance during his consultative evaluation and the observations noted by his counselor and ninth grade teachers," who noted Mr. P. had "no to only slight problems in the ability to make/keep friends."[86] The ALJ found this could be because Mr. P. was unmedicated during the exam.[87] He also noted the consultative examination was based on a single visit while Mr. P.'s counselor had known him for years.[88]

---

[81] (*Id.* at 298.)

[82] (*See id.* at 18–21.)

[83] (*Id.* at 18.)

[84] (*Id.*)

[85] (*Id.* at 20.)

[86] (*Id.*)

[87] (*Id.*)

[88] (*Id.*)

Mr. P. argues the ALJ was required to evaluate Dr. Swaner's evaluation under the framework for medical opinions, and he contends the ALJ failed to adequately articulate persuasiveness, supportability, and consistency under this framework.[89]  However, like the evaluations of Dr. Elder and Dr. Nelson, Dr. Swaner's evaluation did not contain medical opinions as that term is defined by agency regulations.  Although Dr. Swaner observed Mr. P. had difficulties in several areas relevant to the domains of "attending and completing tasks" and "interacting and relating with others," he did not offer any opinion regarding the degree of Mr. P.'s functional abilities or limitations in these domains.  Thus, the ALJ was not required to assess the persuasiveness of Dr. Swaner's evaluation or articulate findings regarding supportability and consistency.[90]

The record reflects the ALJ considered Dr. Swaner's evaluation in assessing Mr. P.'s limitations in the six domains.  Further, Mr. P. does not explain how Dr. Swaner's evaluation was inconsistent with the ALJ's finding of marked limitation in the domain of interacting and relating with others—or with any other findings.  To the extent Dr. Swaner's evaluation was inconsistent with other evidence in the record, the ALJ adequately explained his decision to rely on the other evidence—noting Mr. P. was unmedicated during Dr. Swaner's exam, Mr. P.'s medication effectively reduced his symptoms, and Dr. Swaner's observations were based on a single visit.[91]  Therefore, Mr. P. has failed to demonstrate any error in the ALJ's treatment of Dr. Swaner's evaluation.

---

[89] (Opening Br. 7, Doc. No. 20; Reply 4, Doc. No. 23.)

[90] *See* 20 C.F.R. § 416.920c.

[91] (Tr. 18, 20.)

15

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 23rd day of February, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge